# Rondinella v. Metropolitan Life Insurance Company, Appellant.

*Insurance—Life insurance—Representations as to health—Evidence.*

In an action on a policy of life insurance where it appears that the deceased had stated in his application that he never had heart disease, and one of the facts in issue is whether the insured had had prior to the date of the policy angina pectoris, the disease of which he died, the testimony of nonmedical friends of the deceased is admissible to show that at the date of the policy his appearance was that of a man in sound health, and this is the case although the company had expressly waived the defense of the insured's unsoundness of health at the date of the policy, and the medical testimony is in effect that a person may have angina pectoris and yet have the appearance of a man in sound health.

*Insurance—Life insurance—Evidence.*

In an action upon a policy of life insurance where it appears that the deceased stated in his application that he never had heart disease, but a physician in a statement included in the proofs of death declared that he had treated the deceased for angina pectoris prior to the date of the policy, it is not reversible error for the trial judge to comment in his charge on the fact that the defendant had not called the physician as a witness or taken his testimony by deposition or commission; but it is error for the court to withdraw the statement of the physician contained in the proofs of death from the consideration of the jury.

*Appeals—Assignments of error—Inconsistency between charge and answers to points.*

The Supreme Court will not reverse a judgment because of an inconsistency between the charge and answers to points, where such inconsistency works no harm to the appellant.

*Insurance—Life insurance—Statement as to health.*

In a trial of an action on a policy of life insurance where the evidence shows that the deceased stated in his application that he never had heart disease and it appeared that in the proofs of death there was a statement by a physician that he had treated the diseased prior to the date of the policy for angina pectoris, the disease of which the deceased died, it is error for the court, without evidence to support it, to say to the jury that as the deceased was a physician and on most friendly terms with the physician who made the statement, the deceased might not have regarded the incident referred to in the statement as a consultation or an attendance.

Argued Oct. 15, 1903.   Appeal, No. 87, Oct. T., 1903, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1897, No. 742, on verdict for plaintiff in case of Ferdinand Rondinella, Guardian of Joseph Rizzo, Cornelius Rizzo, Annita

Rizzo and Stella Rizzo, Minors, v. Metropolitan Life Insurance Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit on a policy of life insurance. Before BAR-RATT, J.

See Baldi v. Metropolitan Life Insurance Company, ante, p. 275.

At the trial the court permitted witnesses for the plaintiff to testify that the deceased prior to his death and at the date of the policy, appeared to be a man in sound health. [6–12]

The court charged in part as follows:

[What witness has the defendant called who testified to either of these facts? Not one. Neither side has produced Dr. Leone, nor has the defendant (and it is an important part of his case) taken his testimony, as might have been done, either by disposition or by commission. The only evidence upon the subject was that of the plaintiff, Rondinella, who testified that Leone was not within the jurisdiction of the court—not in the state of Pennsylvania, and I think that was about what his evidence amounted to on that point; not any more than that.] [13]

[After Rizzo's death, Rondinella submitted formal proofs of death to the insurance company, of which the following is a part:

" 9–A. What sickness previous to the last one did deceased have, and when?

" About four years ago a mild attack of angina pectoris which was cured at that time.

" B. Give names and addresses of physicians who attended the deceased or prescribed for any sickness or ailment previous to last sickness.

" Dr. L. V. Leone.

" Dr. Deakyne, Ninth and Pine, 1892 ; essential fever."

This was the only evidence in the case on the subject, and it is upon this evidence that the defendant rests his case.] [14]

[The defendant claims that it was a statement made by Rondinella, the plaintiff, and, being a declaration against his interest, it is not only evidence against him, but it is made so

by the express condition of the policy, which condition, that it is a condition of the policy, is not denied by plaintiff. But the Superior Court has decided that statements in the proofs of death that the insured, prior to the date of the application and three or four years before his death by angina pectoris, had a mild attack of angina pectoris, which was cured at that time, cannot be construed as conclusive admission that the insured had an incurable disease prior to the date of the policy.] [15]

[That is the testimony of the three witnesses called by the plaintiff—Mr. Baldi, Mr. Bielo, and Mr. Brunetti, who testify concerning this conversation in the corridor of the court. In the proofs of death submitted to the defendant, in his certificate Dr. Leone said that he attended Dr. Rizzo four years before for angina pectoris. If you believe this witness, whose testimony I have just read to you, you will be justified in concluding that he made an entirely contrary statement to them. If their testimony is believed by you, Dr. Leone admitted to them that he did not attend Dr. Rizzo at this time, but that Dr. Deakyne attended him, and that Dr. Leone saw Dr. Rizzo on the following day in a friendly way. If you believe their testimony as to this interview, it is evidence which goes to the credibility of the Dr. Leone. It is for you to say upon which occasion, whether in the certificate submitted to the defendant or in the interview which he had in the corridor here, as related by the witnesses, he was telling the truth. Both statements cannot be true. One may be, and if it is, then the other is not. It is for you to say, under this evidence, which you believe to be the fact when you come to make up your verdict.] [16]

[If the testimony of Dr. Walker, Dr. Sinkler, and Dr. Tyson is correct, Dr. Leone's statement, that Rizzo had a mild attack of angina pectoris and was cured, cannot be true; and that may lead you to doubt the correctness of his statements in the proofs of death.

If Rizzo was cured, did he have angina pectoris? If he had a mild attack he was not cured of the thing itself, if you believe the testimony of the experts. So that when you come to consider the testimony and the questions raised by it you may conclude that Leone was correct when he said that Rizzo was cured and mistaken when he told Rondinella that Rizzo had a mild attack of angina pectoris.] [17]

Defendant presented these points:

1. Under all the evidence your verdict must be for the defendant. *Answer:* Refused. [18]

7. Since no evidence has been offered as to the symptoms of the first attack of angina pectoris mentioned in the proofs of death, you will not allow the difficulty that may exist in diagnosing some cases of angina pectoris to lead you to doubt that this attack of angina pectoris actually occurred. *Answer:* Refused. [19]

8. The testimony of Mr. Baldi and other witnesses as to a conversation with Dr. Leone in the corridor of the court room in January, 1900, does not disprove the facts stated in the proofs of death submitted by this claimant to the defendant. *Answer:* Refused. [20]

Verdict and judgment for plaintiff for $1,320.50. Defendant appealed.

*Errors assigned* among others were (1–12) various rulings on evidence, quoting the bill of exceptions; (13–20) above instructions, quoting them; (21) that answers to certain points of defendant were inconsistent with the charge.

*Arthur G. Dickson,* for appellant.

*William A. Gray,* with him *Frederick A. Sobernheimer,* for appellee.

OPINION BY RICE, P. J., March 14, 1904:

So far as the terms and conditions of the policy in suit, the statements in the application therefor, the statements in the proofs of death, and the evidence given on the trial in explanation of the latter statements, are concerned, this case does not differ essentially from the case of Baldi v. Metropolitan Life Insurance Co., in which we have this day filed an opinion. As these matters are quite fully recited and the questions raised by the first five assignments of error are discussed at length in our opinion filed in that case, it is unnecessary to go over that ground again. These assignments are overruled.

The question raised by assignments six to twelve inclusive is thus stated by appellant's counsel: "When defendant had

expressly waived the defense of insured's unsoundness of health at the date of the policy, was the testimony of nonmedical friends as to his appearance admissible?" In opening his case to the jury counsel for defendant stated that the company would not rely upon any defense arising under the first condition of the policy which, so far as material here, was to the effect that no obligation was assumed by the company unless at the date of the policy the insured was in sound health. The policy was dated in October, 1894. Under this concession the sole defense relied on was, that Dr. Rizzo's statements in the application—these being made warranties—that he had not had disease of the heart, that the only illness he had had since childhood was essential fever due to a cold, for which he was attended by Dr. Deakyne, and that he had not consulted any other physician were shown to be untrue by the proofs of death, in which it was stated that he had had a mild attack of angina pectoris, "which was cured at that time," in the latter part of 1893 or the early part of 1894, for which he consulted and was attended by Dr. Leone. It is argued that the existence of this disease or the diseased condition of the heart of which it is a symptom would not be disproved by testimony of laymen, no matter how satisfactory, that about the time when it is alleged he had the attack, and before and after, his appearance and actions were those of a man in sound health. This proposition is sustained by the testimony of the physicians called on both sides. Dr. Tyson, called by the plaintiff, said : " It often occurs that hearty looking persons and persons who appear to be healthy otherwise may have this disease." Dr. Sinkler, called by the defendant, testified to the same effect. In view of this concurrence of medical testimony we are warranted in concluding that such testimony of laymen as we have above alluded to would have little value in determining the question whether the insured had an attack of angina pectoris at the time stated in the proofs of death; and even though it were established to the satisfaction of the jury that about that time, and before and after, his actions and appearances seemed to his friends and acquaintances to be those of a man in sound health, this would not be sufficient of itself to overcome the evidence furnished by the proofs of death that he had such attack. But it has not been made clear to us, either by the testimony of the medical

gentleman or otherwise, that this fact would be wholly imma-
terial and irrelevant in determining whether the attack resulted
from a disease of the heart or from some other cause.   It is no
answer to an offer of evidence that it does not prove the plain-
tiff's whole case ; if it is a link in the chain of evidence already
in, or afterwards to be given, it is admissible.   One of the facts
put in issue by the evidence in this case was whether the in-
sured had had angina pectoris—a disease, or the symptom of a
diseased condition of the heart which defendant claims to be
incurable.   The evidence under consideration had a bearing,
though perhaps slight, upon that question.   We held such
testimony to be admissible where the defendant's contention
was that Dr. Rizzo was not in sound health at the date of the
policy, because, as appeared by the proofs of death, he had had
the attack of angina pectoris referred to in the proofs of death
put in evidence in this case : Baldi v. Metropolitan Life Insur-
ance Co., 18 Pa. Superior Ct. 599 ; Rondinella v. Metropolitan
Life Insurance Co., 18 Pa. Superior Ct. 613.   Unless we over-
rule that decision, which we are not prepared to do, it would re-
quire us to draw a too fine distinction in order to convict the
court of error in receiving such testimony upon this trial.

The remaining assignments relate to the charge and answers
to the points submitted by the defendant.   After correctly
stating the defense upon which the defendant relied the court
said : " Now, it is admitted that Rizzo died of angina pectoris
in 1897.   Was Rizzo attended by Dr. Leone, and did he have
an attack of angina pectoris four years before that?   Those are
the two important questions in this case, and it is for you to
decide them under the evidence.   If you find that this is
so, or that either of these allegations is so, I instruct you
that your verdict must be for the defendant.   If you find
that they are not so, your verdict should be for the plaintiff
for the amount of the policy, together with interest."   This
was a clear and concise statement of the issue and the law
applicable to it.   The accompanying remarks of the learned
judge would seem to show, although he did not say so in so
many words, that in his opinion the law relative to warranties
in life insurance policies is unduly harsh and ought to be
amended by legislative enactment.   This would better have
been omitted.   But this digression was immediately followed

by instructions, which the jury could not fail to understand, that the contract of insurance upon which the action was brought, like all contracts, was binding on the parties, and that it was the duty of the jury to apply the law as the court had given it to them, not allowing their sympathies to control or sway them. Still further on in his charge he said: " If you find from the evidence that this is true, that he was attended by Dr. Leone, or that he did have angina pectoris, that is the end of the case, and your verdict must be for the defendant." The same idea was expressed in defendant's second and third points, both of which were affirmed without qualification. Taking what preceded and what followed the remarks above alluded to in connection with the answers to the points, we are unable to conclude that they had the effect, as is argued by appellant's counsel, of inflaming the minds of the jury against the defendant while cautioning them against any such effect. Moreover they are not specifically assigned as error. Therefore we dismiss this contention of counsel without further discussion.

The defendant must have known, or at least had reason to believe, from what had occurred on the former trials of this and the Baldi case, that the correctness of Dr. Leone's statement in the proofs of death would be assailed. His testimony in accordance with that statement, if believed by the jury, would have completely rebutted the testimony offered by the plaintiff and established a complete defense. Therefore we cannot say that the comments of the court, quoted in the thirteenth assignment, upon defendant's omission to call him as a witness or to take his testimony by deposition or commission constituted reversible error. See Ginder v. Bachman, 8 Pa. Superior Ct. 405; Wills v. Hardcastle, 19 Pa. Superior Ct. 525, and the cases therein cited. Therefore this assignment is not sustained.

But it is to be borne in mind that by the express provision of the policy, his statement, which constituted part of the proofs of death, was " evidence of the facts therein stated in behalf of but not against the company." It was still evidence to be submitted to the jury, notwithstanding the evidence introduced by the plaintiff to impeach it. The defendant based its defense very largely upon it. Prima facie it was intrinsically stronger evidence of the facts recited in it than

the plaintiff's statement, not only because it purported to be based on Dr. Leone's personal knowledge of them, but also because it related to matters concerning which, by reason of his professional training, he was presumably better qualified to speak than a layman. It was especially important, because of the comments which the court had made on the defendant's omission to call Dr. Leone as a witness, that the court should not withdraw his statement from the consideration of the jury, or give instructions which might be construed by them as a judicial ruling that it was not evidence to be considered by them. Hence when the learned judge quoted the plaintiff's statement, which was less full and explicit than that of Dr. Leone, and told the jury this was the only evidence in the case on the subject, and upon this evidence the defendant rested its case, he fell into error. This error in the statement of the defendant's evidence upon the pivotal question of the case was manifestly prejudicial in its tendency, and a most careful examination of the charge has failed to convince us that the misleading and injurious tendency of the error was counteracted by what the learned judge said later upon the subject.

In speaking of the effect of the plaintiff's statement in the proofs of death as an admission against interest, it was not wholly irrelevant to call attention to our ruling when the case was here before that it could not be construed as a conclusive admission that the insured had an incurable disease prior to the date of the policy. But in that trial the question was whether the insured was in sound health at the date of the policy; on this trial the question was whether there was a breach of the warranty in the application as to prior illness and treatment therefor by a physician. It was scarcely an adequate presentation of the law applicable to the plaintiff's statement as evidence upon the latter issue to quote our ruling as to its inconclusiveness as an admission of the incurableness of the ailment for which he had been treated by Dr. Leone, without calling the jury's attention to its function as evidence that he had been so treated.

We pass now to the twenty-first assignment in which the error alleged is that the charge and answers to the points—all of which are quoted at length—were inconsistent.

Under the evidence in this case the question whether the statements in the application were untrue was for the jury, and so the learned judge told them in his general charge. The effect of his affirmation of the defendant's fourth and sixth points was to take that question from them. But this inconsistency between the charge and the answers to the points was not harmful to the defendant and is not ground for reversal. The plaintiff might have complained of it if the verdict had gone against him.

But there is another inconsistency which it seems to us is more serious and of which the defendant has a right to complain. In defendant's third point the court was asked to charge that if the insured consulted Dr. Leone in 1893 or 1894 for angina pectoris, or what was considered to be angina pectoris, then a material warranty contained in the application was untrue, the policy was void and the verdict should be for the defendant. The court affirmed this point and was right in so doing. So in the general charge the court plainly and correctly instructed the jury as follows : "Was Rizzo attended by Dr. Leone for any illness of sufficient gravity to require the attendance of a physician ? If so, he should have communicated that fact to the company, and, if he did not communicate that fact to the company, he failed in a material warranty, and the guardian of his minor children cannot recover here." But the force of this plain statement of the question and the law applicable to it was very much weakened by the suggestion that accompanied it that Rizzo himself was a physician, that he was on most friendly terms with Dr. Leone, that they consulted together, and that they were friends. "Even if he did see Dr. Leone about this matter," said the court, " he might not have regarded that as a consultation or an attendance ; he might not have paid any attention to what he said. You will have to consider that aspect of the case, with the other testimony that is before you." So far as we have been able to discover this last suggestion rests on pure conjecture ; it was erroneous to present it as a mode of reconciling the statements in the application with the statement of Dr. Leone that he had attended the insured for an attack of angina pectoris and had given him inhalation of amyl nitrate therefor, this being the usual treatment for such an attack. Further in concluding his charge the learned judge said :

"If Rizzo was cured, did he have angina pectoris? If he had a mild attack, he was not cured of the thing itself, if you believe the testimony of the experts. So that when you come to consider the testimony and the questions raised by it, you may conclude that Leone was correct when he said that Rizzo was cured, and mistaken when he told Rondinella that Rizzo had a mild attack of angina pectoris." . (This is specifically alleged as error in the seventeenth assignment) "If in your deliberations you should arrive at this conclusion on the whole testimony, then your verdict should be for the plaintiff for the amount of the policy, $1,000, with interest." If the question upon which the case turned had been whether the insured was in sound health at the date of the policy this instruction would have been appropriate enough but it was not appropriate to the issue being tried. For if Dr. Leone attended Dr. Rizzo for what was considered to be an attack of angina pectoris and gave him the usual treatment for that disease the warranty in the application was untrue in a matter material to the risk and there could be no recovery on the policy, even though the evidence might warrant the jury in finding that Dr. Leone was mistaken in his diagnosis of the ailment. The instructions were inconsistent with the answers to the defendant's second and third points, especially the latter, and were erroneous not only inherently but also because they tended to produce confusion in the minds of the jurors as to the rule of law to be adopted and applied to the case. We do not say that they had a prejudicial effect upon the defendant's case, for we have no means of determining whether the jury followed them or adopted the rule stated in the point; but it is quite clear that they may have been misled and confused by them. Therefore we are constrained to sustain this assignment. The other assignments of error do not require particular discussion. It is sufficient to say that we discover no error in them which would justify us in reversing the judgment. The court was clearly right in holding that the case was for the jury and in refusing the defendant's request for binding instructions. The questions of law are more fully discussed in the Baldi case.

Judgment reversed and venire facias de novo awarded.