## Runyeon, Appellant, *v.* Eaches (No. 1).

*Partnership—Dissolution—Destruction of books—Presumption —Evidence.*

In a suit to settle the rights of former partners, upon distribution of the partnership assets, where the question is whether two certain checks drawn out of the assets were ever replaced by the plaintiff, to whose account they were drawn as loans, the fact that all the books of account which might relate to the fact in dispute are missing, through the act of the plaintiff, raises the presumption that the books, if produced, would militate against him. The plaintiff must establish his claim, and cannot recover upon a failure of proof that he did not repay loans made to his account. A decree holding the plaintiff liable to make good to the firm the amounts of such checks will be affirmed upon the failure of the plaintiff to substantiate his claim that payment was made.

Argued December 8, 1921.   Appeal, No. 251, Oct. T., 1921, by plaintiff, from decree of C. P. Berks Co., Equity Docket, 1917, No. 1219, sustaining exceptions to the report of referee, and entering judgment for defendant, in the case of George O. Runyeon v. Jesse E. Eaches.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Affirmed.

Bill in equity for dissolution of partnership and accounting.   Before ENDLICH, P. J.

The opinion of the Superior Court states the case.

The court below sustained exceptions to the report of the referee with reference to the two items in dispute upon this appeal, and entered judgment for defendant as to those items.   From that part of the decree plaintiff filed this appeal.   (See Runyeon v. Eaches (No. 2), following.)

*Errors assigned* were the decree of the court and various rulings and findings.

*Thos. J. Snyder,* of *Snyder, Zieber & Snyder,* and with him *H. J. Dumn,* for appellant.—When the findings of a referee are approved by the court below, they will not be disturbed except for manifest error: Speer v. Huidekoper, 221 Pa. 448; McGraw v. Hilton, 221 Pa. 568.

And, even where not approved by the court below, the findings of a referee are entitled to all the force and effect of a verdict of a jury, not to be disturbed except upon clearest proof of mistake: Fritz's Est., 160 Pa. 156.

*William Kerper Stevens,* for appellee.—An auditor's finding of fact, which does not rest on testimony, but is merely an inference drawn by him from other facts, has not the value to which his finding of fact is ordinarily entitled: Reading Iron Works, 150 Pa. 369; Dingee v. Wood, 228 Pa. 250.

OPINION BY TREXLER, J., July 13, 1922:

For about thirty years plaintiff and defendant were associated together as partners in the coal business, plaintiff being in a general way the financial manager and defendant the "outside man." Dissensions having sprung up a few years ago between them, the partnership was dissolved by mutual consent, eventually this suit was instituted mainly to settle the rights of the respective parties upon the distribution of the fund raised by the sale of the firm property. The trial and decision of the case were by counsel for the parties committed to a referee. Both parties have appealed from the decree of the court. We are now considering the plaintiff's appeal and it involves two items; a check of December 6, 1902, for $1,404.80 and another of January 31, 1903, for $1,616.10. These amounts as will appear were actually drawn out of the assets of the firm and the question is were they ever repaid. The referee, in his first report, found that they were not, but upon the case being reopened at the instance of the plaintiff, he changed his finding and found that the amounts represented by the

checks had been repaid to the firm.   Upon exceptions being filed, the court below reversed the findings of the referee and found that the plaintiff Runyeon was chargeable with both amounts.   Both checks as appeared by the stub, had been paid to H. C. R. only the initials appearing on the stub.   A daughter of the defendant Eaches named Mrs. Rowland, in the year 1903 was in the office of the firm, Mr. Runyeon being absent on a fishing trip, and made a memorandum of some of the cancelled stubs of the check books and these two items were among the number.   Her testimony as to them is confirmed by the fact that these two items passed through the bank and therefore the giving of the check for the amounts above named is not in doubt.   The initials H. C. R. were those of Harry C. Runyeon a son of George O. Runyeon, plaintiff.   When asked about these checks, the appellant denied having drawn them and his son Harry stated, he never received or endorsed them.   Both were very positive in their statements.   The books and papers of the firm which would have thrown light upon the transaction of the checks were destroyed several years before this present suit was started.   Runyeon as stated below was the financial man of the firm and had charge of the money matters and of the office and books.   When interrogated as to the books, he said "I just know that everything was taken away.   I would not say they were burnt.   To the best of my recollection I would say they were probably given to a boy to take away."   He later stated "I am pretty sure they were destroyed."   A witness, provided by the defendant, testified that Runyeon directed him to take the books across the way in a lot and burn them, and that he did so.   Whether the testimony of the latter witness is true or not, there can be no doubt that Runyeon was responsible for the disappearance of the books and check stubs and the referee so found.   We therefore have the fact that the absence of proof as to the matters in controversy is due to the act of the plaintiff.   **He had no right to destroy the papers pertaining to the firm.   He**

**was** not the only one interested and since the matters pertaining to the firm were not finally settled he certainly should have known that the destruction of the papers or books of the firm was hazardous and likely to create trouble in the future. Whether he destroyed them in good faith or not, we are nevertheless confronted with the fact that the present difficulty in clearing up the affairs of the firm is due entirely to his act. The lower court states the principle of law that the destruction of evidential documents not only raises a presumption that if produced they would militate against the party destroying them but procures more ready admission to the evidence of the opposite side. In support of this he cites Best on Evidence, section 412; Lindley's Law of Partnership, page 412; Frick v. Barbour, 64 Pa. 120.

We have stated that the claim of the defendant as to these checks was met in the first place by an absolute denial, both by the plaintiff and his son. Upon the rehearing, they changed their testimony and admitted the checks were drawn by the appellant from the partnership fund of Runyeon & Eaches for a purpose not connected with the business of the firm. Both checks had been, as is claimed, temporary loans to the Reading Hosiery Company to make up the pay rolls of that company and were repaid by the hosiery company by checks on the Reading National Bank. The checks of the Reading Hosiery Company were not produced but it is stated they were deposited to the account of the partnership, not the identical amounts appearing but larger amounts as shown in the bank book. The plaintiff has no positive recollection as to these facts but he draws these conclusions by reason of the fact that the usual deposits of the company were small and these larger deposits appearing about these dates, they must have included the amounts in dispute. The deposit slips were not available having been destroyed by the bank. The court found against the plaintiff on these two items and we cannot support the conclusion better than by employing the very language of

the court: "It is clear that even though no improper purpose be imputed to the plaintiff, and no presumption made against him, yet the important circumstance of the absence of decisive proof has been created by him who brought this suit and of course is bound to make out his case. As already indicated, his and his son's testimony at the first interrogation of them before the referee and their deposition at the supplemental hearings are inconsistent on the subject of the checks of December 6, 1902, and January 31, 1903. There is no rule of law which for that reason categorically requires the rejection of the earlier or the later deposition, or both: see Fulton v. Lancaster County, 162 Pa. 294. But the party who first emphatically denied having given them or knowing anything about them can hardly expect to control the result by his subsequent testimony that he wrote the checks to the order of his son, that the money in each instance went as an emergency loan to a certain hosiery company in which the plaintiff was interested, to meet its pay roll, and that in a few days it was returned to the firm—especially where no imperative business reason for so roundabout a method as that pursued in these and other transactions is apparent, and there is nothing else to show positively that the exact amount withdrawn was repaid to the firm. It is, of course, not sufficient that there is no specific and express proof that the amount of these checks did not find its way back into the firm's hands. The failure of such proof does not warrant an assumption by the court to the contrary; the court cannot find that to be a fact of which there is no proof: ibid.; Keiser v. Real Estate Company, 43 Pa. Superior Ct. 130, 157. There is to be sure no requirement of proof to an absolute certainty: Yoders v. Amwell Twp., 172 Pa. 447. Approximate certainty is enough: Ibid. But obviously even for that purpose there must be competent legal proof. Now, a fair scrutiny of the plaintiff's evidence shows that what he and his son deposed to at the supplemental hearings was not so much facts remem-

bered by them as inferences, opinions, results of reasoning as to the facts, which they reached on a basis not disclosed but which they persuaded themselves and doubtless believed to represent the true situation. It is hardly necessary to say that, whether objected to or not, that is not the kind of testimony whereupon to ground a finding in their favor. So far as these two checks are concerned, the record constrains us to accept the view first taken by the referee rather than the second, reversing himself, and accordingly to hold that the plaintiff is liable to make good to the firm the sums for which these checks are drawn."

The decree so far as the items involved in this appeal are concerned is affirmed. Appellant to pay the costs.